UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARCUS WASHINGTON,<br><br>      Petitioner,<br><br>   vs.<br><br>RICK HILL, Warden,<br><br>      Respondent. | Case No: C 10-5532 SBA (pr)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

This matter is now before the Court for consideration of Petitioner Marcus Washington's pro se amended petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2007 conviction in the San Mateo County Superior Court. For the reasons discussed below, the amended petition is DENIED as to all claims.

## II. BACKGROUND

### A. PROCEDURAL HISTORY

On November 7, 2007, a San Mateo County jury convicted Petitioner of attempted murder, assault with a firearm, mayhem and torture, along with enhancements for intentional discharge of a firearm causing great bodily injury, personal infliction of great bodily injury and personal use of a firearm. The jury found Petitioner not guilty of attempted robbery. Clerk's Transcript (CT) 344-45; Respondent's Ex. 6; People v.

Washington, No. A120081, 2009 WL 1547520, *1 (Cal. Ct. App. June 3, 2009) (unpublished).  On December 14, 2007, the court sentenced Petitioner to a prison term of thirty-two years to life in prison.  CT 432-33; 435-38; Washington, 2009 WL 1547520, at *1.  Petitioner was twenty-two years old at the time he committed the offenses.  CT at 3.

Petitioner appealed his conviction and sentence to the California Court of Appeal.  In an unpublished opinion filed on June 3, 2009, the Court of Appeal affirmed the judgment.  Washington, 2009 WL 1547520, at *1.  On September 17, 2009, the California Supreme Court denied Petitioner's petition for review.  Resp.'s Exs. 7, 8.

On December 6, 2010, Petitioner filed his federal petition in this Court, raising exhausted and unexhausted claims.  Dkt. 1.  On January 18, 2011, the Court issued an Order to Show Cause why the writ should not be granted.  Dkt. 2.  On March 16, 2011, the Court granted Petitioner's motion for a stay in order to allow him to exhaust his unexhausted claims in state court.  Dkt. 4.

Petitioner filed a habeas petition in the California Supreme Court raising claims for: (1) cruel and unusual punishment in violation of the Eighth Amendment based on the mandatory consecutive term of twenty-five years to life (which resulted from the firearm enhancement under California Penal Code section 12022.53(d)[1]); (2) ineffective assistance of trial counsel for failing to "put the prosecutor's single act multiple offense conduct theory to any kind of an adversarial testing;" and (3) violation of double jeopardy based on the prosecutor's charging Petitioner with multiple crimes based on one action.  Dkt. 8 (Am. Pet.) at 38-55 (Habeas Petition filed in California Supreme Court).  On May 18, 2011, the California Supreme Court summarily denied the petition.  Dkt. 6 (Motion to Reopen Case).

On July 19, 2011, the Court granted Petitioner's motion to lift the stay and to file an amended petition.  Dkt. 7, 8.  Respondent filed his answer on December 7, 2011.  Dkt. 14.  On April 13, 2012, Petitioner filed a traverse.  Dkt. 16.  The matter is now fully briefed and is ready for review on the merits.

---

[1] Unless otherwise noted, all further California statutory references are to the California Penal Code.

**B.     STATEMENT OF FACTS**

The following facts are taken from the opinion of the California Court of Appeal:

> By December 11, 2006, Michael Booker had known defendant for approximately four or five years. Booker was a narcotics user and had purchased drugs on at least five occasions from defendant in the two years preceding December 11. During this period, Booker purchased drugs from others approximately every two to three days. Defendant was aware that Booker bought drugs from others and often insulted him by calling him a "punk motherfucker" or "bitch." Defendant also threatened Booker several times, and about six to ten months before the shooting, he assaulted him. At the time of the assault, Booker was buying drugs from another individual. Booker continued to buy drugs from other individuals and defendant continued to threaten him by asking, "You remember what happened last time?"
>
> At approximately 8:00 p.m. on December 11, 2006, Booker went to 1124 Mello Street in East Palo Alto to meet Vic, a drug dealer. While he was standing in the front yard of the house, defendant and Ronnie Meachum approached him. Defendant said, "Why do [you] act funny style." Defendant then hit him on the left side of his head. Booker hit defendant back in the head, knocking him to the ground.
>
> Defendant got up and reached for the crotch of his pants and pulled out a gun. He pointed it at Booker and shot him in the leg. Booker tried to walk but fell to the ground. Defendant leaned over Booker and hit him in the face with the butt of the gun in his left cheek, saying "[y]ou thought I was a punk, didn't you, bitch." Booker's cheek bled and he suffered internal bleeding in his sinuses. He could not stand up and defend himself. Defendant and Meachum proceeded to go through Booker's pockets as he lay on the ground, but found nothing of value.
>
> Defendant next stood at Booker's feet and pointed the gun at his groin area. Defendant turned his head and pulled the trigger. Booker saw "the fire coming right at me" and yelled. Booker was checking to see where he had been shot when defendant fired a third shot at his chest, hitting him in his left elbow. Booker's left elbow had been positioned close to his chest area. Booker faked his last breath and pretended to be dead. Defendant and Meachum fled. Booker waited about 45 seconds before yelling for help.

> Ioane Masuisui was driving his car near Mello and Menalto Streets when he heard a loud moaning noise. Masuisui stopped his car and turned down his radio. He then heard a call for help. He exited from his car and saw Booker on the ground. Booker's face was "pretty marked up" and he could not get up. He yelled "just call 911." Masuisui called 911.
>
> The police arrived within two to three minutes. They found Booker conscious and breathing, he was bleeding and had obvious injuries. Paramedics arrived and began treatment. The paramedics had to cut Booker's clothes off because they were soaked with blood. Booker was able to tell Officer Kalb that defendant was the perpetrator. Kalb attempted to get a statement, but Booker who was in "obvious pain" was preoccupied with the paramedics. Deputy Grosso took photographs of Booker and the scene and testified that it was a "pretty bloody scene" and that the photographs did not "do justice to when you're actually on scene."
>
> The paramedics took Booker to Stanford Hospital where he underwent surgery and was hospitalized for nine days. Kalb was not able to interview Booker upon his arrival at the hospital because he was immediately given morphine for pain. Booker was evaluated in the trauma department and found to have multiple gunshot wounds including one to his leg. Booker suffered an injury to the left side of his face, and gunshot wounds to his left elbow, buttocks, and his right thigh. The gunshot wound to the thigh resulted in a severe fracture of Booker's femur. There were multiple breaks in the femur, the bone that extends between the hip and the knee. Booker underwent surgery immediately to remove the bullets in his leg and elbow. The wound to his leg was a very significant injury carrying a high risk for infection. Booker subsequently underwent an additional operation to attempt to realign the bones in the femur and to put in a plate and screws. Booker testified that he continues to suffer from his injuries—"one wrong step on my leg and [I] regret it for hours." He limps and his right leg is now about an inch and a quarter shorter than the left leg.
>
> The parties stipulated that G. Andrew Smith, a criminologist, examined the bullets removed from Booker and determined that they were fired from the same gun.
>
> Booker identified defendant in a photo line-up on December 12, 2006.

Washington, 2009 WL 1547520, at *1-2.

//

- 4 -

### III. LEGAL STANDARD

#### A. ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT

Because Petitioner filed his petition after April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs the Court's review of his claims. Under AEDPA, habeas relief is inappropriate unless the petitioner can show that the state court's last reasoned adjudication of his federal claims resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This Court's review is "highly deferential." Harrington v. Richter, 131 S.Ct. 770, 785 (2011).

#### B. EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through state collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987).

The parties disagree whether Petitioner has exhausted all of the claims in his amended petition. A review of Petitioner's petition to the California Supreme Court shows that he has not exhausted the ineffective assistance of trial and appellate counsel claims in his amended petition. Nonetheless, although a federal court may not grant habeas relief on an unexhausted claim, it may deny relief on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999).

## IV. DISCUSSION

Petitioner asserts the following claims in his amended petition: (1) Penal Code section 12022.53(d) violates the Eighth Amendment's prohibition against cruel and unusual punishment; (2) insufficient evidence supports Petitioner's torture conviction under Penal Code section 206; (3) section 206 is unconstitutionally vague; (4) ineffective assistance of trial counsel based on his failure to challenge section 206 as unconstitutionally vague; and (5) ineffective assistance of appellate counsel because counsel failed to raise claims that trial counsel was ineffective for failing: (a) to object to section 206 as unconstitutional and (2) to raise the defenses of imperfect self-defense or temporary insanity.

### A. CRUEL AND USUAL PUNISHMENT

Petitioner claims that the firearm enhancement under Penal Code section 12022.53(d), which imposes a mandatory consecutive term of twenty-five years to life, as applied, constitutes cruel and unusual punishment in violation of the Eighth Amendment.[2] In this case, the California Supreme Court summarily rejected Petitioner's Eighth Amendment claim on habeas review. Because there is no reasoned state court opinion on this claim, however, this Court must conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. See Plascencia, 467 F.3d at 1198.

The United States Supreme Court has recognized that the Eighth Amendment includes a "narrow proportionality principle" that applies to terms of imprisonment.

---

[2] Penal Code section 12022.53(d) states: "[A]ny person who, in the commission of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 26100, personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." The California Legislature enacted this statute based on its determination that "substantially longer prison sentences must be imposed on felons who use firearms in the commission of their crimes, in order to protect our citizens and to deter violent crime." People v. Palacios, 41 Cal.4th 720, 725 (2007) (internal quotations and citations omitted). California courts consistently have upheld the constitutionality of section 12022.53, rejecting claims that the sentence enhancement constitutes cruel or unusual punishment. People v. Martinez, 76 Cal.App.4th 489, 494-496 (1999); People v. Zepeda, 87 Cal.App.4th 1183, 1212-1215 (2001).

Harmelin v. Michigan, 501 U.S. 957, 996 (1991). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Id. at 1001. To determine whether a sentence is grossly disproportionate, a reviewing court must consider "objective factors" to the extent possible—"[f]oremost among such factors are the severity of the penalty imposed and the gravity of the offense." Taylor v. Lewis, 460 F.3d 1093, 1098 (9th Cir. 2006). "Comparisons among offenses can be made in light of, among other things, the harm caused or threatened to the victim or society, the culpability of the offender, and the absolute magnitude of the crime." Id. Outside the context of capital punishment, however, "successful challenges to the proportionality of particular sentences will be exceedingly rare." Solem v. Helm, 463 U.S. 277, 289-290 (1983).

In the instant case, the parties do not dispute that the consecutive term of twenty-five years to life is "severe." See Taylor, 460 F.3d at 1098 ("A term of imprisonment of twenty-five years to life is surely a harsh penalty."). At the same time, Petitioner's sentence is objectively proportional to the gravity of the offense conduct. The record shows that, without provocation, Petitioner struck and then shot Booker multiple times. Petitioner's claim that he was merely defending himself from a "drug-crazed assailant" is not supported by the record. Although Booker hit Petitioner, he did so only after Petitioner struck him first. See Washington, 2009 WL 1547520, at *1. After Booker returned Petitioner's blow, Petitioner immediately took out a gun and shot Booker in the leg. Id. Booker tried to walk but fell over, at which point Petitioner struck Booker in the face with the butt of his gun, resulting in significant injury. Then, at point blank range, Petitioner aimed his firearm at Booker's groin and fired multiple times. In view of these facts, Petitioner's argument that he was merely acting in self-defense is unavailing.

Equally without merit is Petitioner's contention that his sentence under section 12022.53(d) is cruel and unusual in light of his age (twenty-two years-old at the time of the incident) along with his minimal criminal record. This argument is misplaced. The enhancement under section 12022.53(d) is for use of a firearm, not for recidivism.

Therefore, the fact that Petitioner had a minimal criminal record is not probative of whether the statute, as applied, is constitutionally excessive. Moreover, in <u>Harmelin</u>, the Supreme Court upheld a sentence of life without the possibility of parole for cocaine possession, notwithstanding the fact that the petitioner had no prior felony record. 501 U.S. at 994. As for Petitioner's age at the time of the underlying crime (22 years-old), the Court is aware of no authority holding that the age of *an adult* (as opposed to a juvenile) has any bearing on whether a particular sentence is constitutionally excessive.[3]

In sum, given the violent and depraved nature of Petitioner's conduct and the California Legislature's intent to deter and punish the use of firearms, Petitioner's sentence is not grossly disproportionate under the relevant Supreme Court and Ninth Circuit authorities. Accordingly, the Court finds that Petitioner is not entitled to federal habeas relief with respect to the claim that his sentence was disproportionate to his crimes. Relief on said claim is denied.

### B. SUFFICIENCY OF THE EVIDENCE

#### 1. Legal Overview

Petitioner next argues that there was insufficient evidence to establish that he acted with the requisite intent to support his conviction for torture under Penal Code section 206. Section 206 provides, in relevant part:

> Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in Section 12022.7 upon the person of another, is guilty of torture.

Cal. Pen. Code § 206. Petitioner argues that he "acted, not with the vicious, cold-blooded, calculated intent to cause pain and suffering required for torture, but out of a brief, spontaneous explosion of assaultive behavior." Am. Pet. at 11.

---

[3] In <u>Graham</u>, the Supreme Court held that a sentence of life without the possibility of parole constitutes cruel and unusual punishment when imposed for a non-homicide committed by a minor under the age of eighteen. 130 S.Ct. at 2034. <u>Graham</u> is inapposite since Petitioner was an adult at the time of the offense and was not sentenced to life without the possibility of parole.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). As explained by the Supreme Court in Jackson v. Virginia, 443 U.S. 307 (1979), "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.

Under AEDPA, federal courts must "apply the standards of Jackson with an additional layer of deference." Juan H., 408 F.3d at 1274; Smith v. Mitchell, 624 F.3d 1235, 1239 (9th Cir. 2010) (observing that AEDPA combined with Jackson standard requires "double layer of deference"). Even where a state court decision does not cite to or discuss the relevant Jackson standard, habeas relief is not warranted "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. Juan H., 408 F.3d at 1275 n.12. The salient question for a federal habeas court is whether "the state court in substance made an objectively unreasonable application of the Winship and Jackson standards for sufficiency of the evidence." Id.

### 2. State Court Decision

Petitioner raised the instant claim on direct appeal; it was rejected by the Court of Appeal as follows:

> The crime [of torture] has two elements: (1) the infliction of great bodily injury; and (2) the specific intent to cause cruel or extreme pain and suffering for revenge, extortion, persuasion, or any sadistic purpose. (People v. Burton (2006) 143 Cal. App. 4th 447, 452-453.)
>
> Defendant does not contest the great bodily injury element of the crime but argues that the evidence is insufficient to prove that he had the specific intent to cause pain and suffering.
>
> Direct evidence of specific intent is rarely available, although the circumstances surrounding the offense or other

- 9 -

circumstantial evidence may permit an inference that one acted with the intent to inflict cruel or extreme pain." (People v. Misa (2006) 140 Cal. App. 4th 837, 843.) For example, the jury may consider the severity of the wounds in determining whether a defendant intended to torture. (Burton, 143 Cal. App. 4th at 452, see also People v. Mincey (1992) 2 Cal. 4th 408, 433 [condition of the victim's body may establish evidence of the requisite intent].) In addition, "'scarring and disfigurement constitute strong circumstantial evidence of intent to inflict severe pain and suffering.'" (Burton, 143 Cal. App. 4th at 452.) And, a defendant's focus on attacking a vulnerable area also raises an inference of intent to cause extreme pain. (Ibid.) Finally, a defendant's prior threats to the victim can suggest the intent to cause extreme or severe pain. (Ibid.)

Here, the totality of the evidence supported the jury's finding that defendant tortured Booker. Defendant focused his attack on two vulnerable areas-he struck Booker in the face with the butt of a gun and he aimed to shoot him in the groin area. The jury could, thus, have inferred that defendant intended to cause extreme pain. (See Burton, 143 Cal. App. 4th at 452 [a defendant's focus on attacking the face rather than indiscriminately attacking the victim evidenced an intent to cause extreme pain].) Defendant's argument that this evidence does not show an intent to cause pain and suffering because the shot between the legs was coincidental is disingenuous. Booker was on the ground at the time and could not stand up or defend himself. Defendant's shot toward Booker's groin under these circumstances reflects "a calculated purpose of causing [Booker] to suffer." (Misa,140 Cal. App. 4th at 843.) Moreover, the evidence showed that defendant had previously threatened and assaulted Booker, taunting him at times after the assault, saying "You remember what happened last time"; and that he committed the crime as revenge for Booker's use of other dealers for his drug purchases.

. . .

The circumstances here also showed defendant's callous indifference to Booker's need for medical attention. Not only did he continue to inflict serious injuries upon Booker after the initial gun shot wound, he fled when Booker feigned death. (Misa, 140 Cal. App. 4th at 843 [indifference to victim's need for medical intervention supported the inference of an intent to cause cruel pain and suffering].) In sum, substantial evidence supports the torture conviction.

Washington, 2009 WL 1547520, at *3-4.

### 3. Analysis

The state appellate court's rejection of Petitioner's claim of insufficient evidence is not objectively unreasonable. There was ample evidence from which the jury could find beyond a reasonable doubt that Petitioner demonstrated the intent to inflict extreme pain and suffering for sadistic purposes, as defined by California law. The fact that Petitioner focused his attack on two vulnerable areas of the victim's body, his face and groin, while the victim was lying wounded and defenseless on the ground, shows Petitioner's intent to cause extreme and severe pain. Furthermore, the evidence that Petitioner had previously assaulted, threatened and taunted the victim for purchasing drugs from other drug dealers, evidenced his intent to inflict pain for purposes of revenge. Because these two factors demonstrate the requisite specific intent for torture under Penal Code section 206 and California cases interpreting it, there was sufficient evidence to support the jury's verdict that Petitioner was guilty of torture.

Petitioner's contention that his crime was a brief, spontaneous assault is not supported by the evidence. After the victim was on the ground as a result of being shot in the leg by Petitioner, Petitioner hit him in the face with the butt of his gun and then shot him twice more, aiming at the victim's groin and chest. This evidence simply does not support a finding of a brief assault but of an ongoing attempt to maim—and possibly, kill—the victim. Therefore, Petitioner's argument is without merit.

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the jury's finding that Petitioner had the requisite specific intent. Furthermore, the state appellate court's decision was not contrary to or an unreasonable application of established Supreme Court authority as set forth in <u>Jackson</u> and its progeny. For these reasons, Petitioner's claim of insufficient evidence is denied.

//

//

//

### C. CONSTITUTIONALITY OF TORTURE STATUTE

Petitioner next claims that Penal Code section 206 is unconstitutionally vague. A state criminal statute may be challenged as unconstitutionally vague by way of a petition for a writ of habeas corpus by a prisoner convicted under the statute. Vlasak v. Superior Court of California, 329 F.3d 683, 688-90 (9th Cir. 2003). A statute may be unconstitutional "on its face" or "as applied." A successful challenge to the facial constitutionality of a statute invalidates the statute itself, whereas a successful as-applied challenge does not render the statute itself invalid but only the particular application of the statute. Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998). At issue here is a facial challenge pursuant to which "a statute is unconstitutionally vague if it fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Harris, 705 F.3d 929, 932 (9th Cir. 2013) (internal quotations omitted).

The Court of Appeal rejected Petitioner's vagueness challenge, as follows:

> Defendant also argues that section 206 is unconstitutionally vague. He argues that the terms, cruel or extreme pain and suffering, revenge, any sadistic purpose, and torture are vague.
>
> Under both the state and federal Constitutions, to withstand a claim of statutory vagueness, due process requires that the statute "be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt." (Williams v. Garcetti (1993) 5 Cal. 4th 561, 567.) In People v. Aguilar (1997) 58 Cal. App.4th 1196, the Appellate Court considered the issue of whether section 206 was unconstitutionally vague and determined that the terms cruel or extreme pain and suffering, any sadistic purpose, and torture were terms in common usage with sufficiently precise and definite meanings to withstand a challenge on the ground of vagueness. (Id. at 1200-1205.) We agree with the reasoning of Aguilar that the language of section 206 meets the standards of precision and certainty required and is not unconstitutionally vague. . . .

Washington, 2009 WL 1547520 at *4-5; see also People v. Misa, 140 Cal. App. 4th 837, 844 (2006) (noting that numerous Califonia decisions have rejected claims that Penal Code section 206 is void for vagueness).

- 12 -

Petitioner makes no showing that the state court decision is contrary to, or an unreasonable application of, federal law. Nor does he argue that any of the particular terms used in Penal Code section 206 fail to provide adequate notice to a person of ordinary intelligence fair notice of what is prohibited. See Harris, 705 F.3d at 932.[4] Rather, Petitioner complains that the statute "does not require any proof that the victim suffered pain" and that "it is inconceivable a victim could suffer great bodily injury, survive, and yet experience no pain." Am. Pet. at 13. This argument misses the point. The plain terms of the statute plainly prohibit, inter alia, the infliction of great bodily injury for a sadistic purpose. As such, it is the actus reus and mens rea *of the defendant* that are at issue. That the statute does not require proof that the victim suffered pain is completely inapposite, since it is defendant's *intent and act* of inflicting great bodily injury, as opposed to the actual infliction of pain, that are germane. This is clear from the plain terms of the statute, and any person of ordinary intelligence would have fair notice of what is prohibited. Therefore, Petitioner's request for habeas relief based on this claim is denied.

### D. INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL

Petitioner asserts claims of ineffective assistance of trial and appellate counsel. He contends that trial counsel was ineffective for failing to challenge Penal Code section 206 as unconstitutionally vague. As to appellate counsel, Petitioner alleges that counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective for failing to present defenses based on imperfect self-defense and temporary insanity.

#### 1. Exhaustion

As a threshold matter, the parties dispute whether Petitioner's ineffective assistance of counsel claims are exhausted. To satisfy the exhaustion requirement, "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the

---

[4] As noted, Penal Code section 206 makes it a crime for a person to (1) act "with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion" or (2) or "for any sadistic purpose, *inflicts great bodily injury* as defined in Section 12022.7[.]" (Emphasis added).

claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004). Here, Petitioner's direct appeal did not raise a claim of ineffective assistance of trial counsel. See Ex. 3 (court of appeal), Ex. 7 (California Supreme Court). In his state habeas corpus petition, Petition did raise such a claim, albeit on a ground different than presented herein. Therefore, Petitioner's current claims of ineffective assistance are not properly before the Court because they have not been fully and fairly exhausted.

Although unexhausted claims may not be granted by a federal court, they may be denied on their merits. See 28 U.S.C. § 2254(b)(2); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) ("[A] federal court may deny an unexhausted petition on the merits ... when it is perfectly clear that the applicant does not raise even a colorable federal claim."); Gatlin, 189 F.3d at 889. The Court now addresses the ineffectiveness claims and denies them as meritless.

**2. Merits**

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). There is a two-prong test applicable to claims for ineffective assistance of counsel. Id. at 688. First, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." Id.; see also Hasan v. Galaza, 254 F.3d 1150, 1154 (9th Cir. 2001). The defendant must overcome a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance which, under the circumstances, might be considered sound trial strategy. United States v. Molina, 934 F.2d 1440, 1447 (9th Cir. 1991). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 468 U.S. at 687.

To satisfy the second prong, petitioner must establish that he was also prejudiced by counsel's substandard performance. See Gonzalez v. Knowles, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing Strickland, 466 U.S. at 694). Under Strickland, "[o]ne is prejudiced if

1  there is a reasonable probability that but-for counsel's objectively unreasonable
2  performance, the outcome of the proceeding would have been different." Id. Judicial
3  scrutiny of counsel's performance is "highly deferential." Strickland, 466 U.S. at 689. A
4  claim of ineffective assistance of counsel fails if either one of the prongs is not satisfied.
5  Strickland, 466 U.S. at 697.

### *a) Trial Counsel*

7  Petitioner first argues that trial counsel was ineffective for failing to argue that Penal
8  Code section 206 was unconstitutionally vague. As discussed above, the Court has rejected
9  Petitioner's constitutional challenge to section 206. Counsel's performance cannot be
10 deemed deficient for failing to make a meritless argument. See Juan H., 408 F.3d at 1273;
11 Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996). Therefore, Petitioner's claim of
12 ineffective assistance of trial counsel fails.

### *b) Appellate Counsel*

14 The Strickland standard also applies to claims of ineffective appellate counsel.
15 Smith v. Robbins, 528 U.S. 259, 285 (2000). Appellate counsel has no constitutional duty
16 to raise every nonfrivolous issue requested by the client. Jones v. Barnes, 463 U.S. 745,
17 751-54 (1983). "Experienced advocates since time beyond memory have emphasized the
18 importance of winnowing out weaker arguments on appeal and focusing on one central
19 issue if possible, or at most on a few key issues." Id. at 751-52. To determine whether
20 appellate counsel was ineffective for failing to raise claims that trial counsel was
21 ineffective, the Court "must first assess the merits of the underlying claims that trial
22 counsel provided constitutionally deficient representation." Moormann v. Ryan, 628 F.3d
23 1102, 1106-107 (9th Cir. 2010). "If trial counsel's performance was not objectively
24 unreasonable or did not prejudice [the petitioner], then appellate counsel did not act
25 unreasonably in failing to raise a meritless claim of ineffective assistance of counsel, and
26 [the petitioner] was not prejudiced by appellate counsel's omission." Id.
27 Petitioner alleges that his appellate counsel should have claimed that his trial counsel
28 was ineffective for failing to present the defenses of imperfect self-defense and temporary

- 15 -

insanity. The Court disagrees. In his closing argument at trial, defense counsel maintained that the victim's testimony was not credible because he lied about important aspects of the incident as well as the identity of the shooter. Reporter's Transcript (RT) 336-49 (defense closing). In particular, counsel pointed out that medical evidence showed that the victim was shot in the leg from behind, whereas the victim testified that he was shot by Petitioner, who was standing in front of him. RT at 341-42. Counsel pointed out that the victim's testimony also contradicted his statements to medical personnel that he was shot while he was fleeing. RT at 343. Counsel highlighted that the case was solely about the credibility of the victim, Michael Booker:

> This case is all about Michael Booker. This case is all about a man who is a long-time drug user, who was granted immunity by the government to come in and discuss his grudge and his relationship with Marcus Washington. This is a man who, under oath, after having been interviewed by police officers, has given varying accounts of what happened. . . . We have no corroboration. We don't have a gun. We don't have the blood that would be presumably found on the clothing of the perpetrator. We don't have other matching bullets. We don't have gunshot residue on the clothing of the perpetrator. We don't have a single witness. We have Michael Booker's word.
>
> . . .
>
> But still the man got shot. Why would anybody ever come into a court and, under oath, identify Marcus Washington as the shooter if Marcus Washington wasn't the shooter? Certainly he wouldn't–-Mr. Booker wouldn't lie about something like that. He wouldn't make up a story. But he would. And he did. And he got caught. We have at least one example of that. And that is because, when he came here, once again, under oath, he described for you a beating about six months earlier that he suffered at the hands of Marcus Washington. . . .
>
> Ladies and Gentlemen, that drastically, dramatically, is in opposition to the statement that he gave to Officer Alcaraz, who testified that Mr. Booker claimed that six months earlier, he was beaten by attackers but he was unable to identify any of them. . . .
>
> Somebody shot Michael Booker on December 11th of last year while something happened, and Michael Booker was fleeing, by his own words, he was running, and one of those shots certainly took him down.

> *The entire case of whether you believe Marcus Washington did it rests on a guy who has clearly lied to you about several things, and clearly has lied to you about framing Marcus Washington for a prior beating.*

RT at 344, 347-49 (emphasis added).

The above excerpt from defense counsel's closing argument illustrates that he made a cogent, impassioned argument to the jury that the victim was not credible and that he had a motive to lie based on his grudge against Petitioner, and, to that end, had lied several times in order to incriminate Petitioner. Thus, the gist of defense counsel's argument was that Booker framed Petitioner and that Petitioner did not shoot Booker on December 11, 2007. The two theories that Petitioner now argues that defense counsel should have raised—namely, imperfect self-defense and temporary insanity—would, in effect, amount to a concession that Petitioner shot Booker, but that there were reasons to excuse the shooting. Had defense counsel presented those additional defenses, they would have directly contradicted the primary defense theory presented by defense counsel. Thus, Petitioner's ineffective assistance claims are predicated on little more than a difference of opinion regarding trial tactics, which is insufficient to support a claim of deficient performance. See United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981) (en banc). Since trial counsel was not ineffective for failing to raise these defenses, his appellate counsel cannot be deemed ineffective for failing to fault trial counsel's strategic decisions. See Moormann, 628 F.3d at 1106-107.

E. **CERTIFICATE OF APPEALABILITY**

The Court finds that no certificate of appealability is warranted in this case. See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition). Petitioner has failed to make a substantial showing that a reasonable jurist would find this Court's denial of his claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Therefore, the Court declines to issue a Certificate of Appealability. Any further request

for a Certificate of Appealability must be addressed to the Court of Appeals. <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases.

V. **<u>CONCLUSION</u>**

For the foregoing reasons,

IT IS HEREBY ORDERED THAT the petition for a writ of habeas corpus is DENIED. The Court declines to issue a Certificate of Appealibility. The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: July 26, 2013

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

1

2   UNITED STATES DISTRICT COURT
    FOR THE
3   NORTHERN DISTRICT OF CALIFORNIA

4

5   MARCUS D WASHINGTON,

6            Plaintiff,

7       v.

8   RICK HILL et al,

9            Defendant.
10   _____/

11

12                                              Case Number: CV10-05532 SBA

13                                              **CERTIFICATE OF SERVICE**

14

15   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

16
    That on July 29, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said
17   copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing
    said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
18   located in the Clerk's office.

19

20

21   Marcus D. Washington G-00436
    Folsom State Prison
22   P.O. Box 950
    Folsom, CA 95763
23

24
    Dated: July 29, 2013
25                                          Richard W. Wieking, Clerk
                                            By: Lisa Clark, Deputy Clerk
26

27   G:\PRO-SE\SBA\HC.10\Washington 10-5532 HC.deny-rmh.doc

28